IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Environmental Defense  :
Foundation,                         :
                                    :
                    Petitioner      :
                                    :
          v.                        : No. 358 M.D. 2018
                                    : Argued:  September 11, 2019
Commonwealth of Pennsylvania, and   :
Tom Wolf, in his official capacity  :
as Governor of Pennsylvania,        :
                                    :
                    Respondents     :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  October 22, 2020

          In this case initiated by the Pennsylvania Environmental Defense

Foundation (Foundation) against the Commonwealth of Pennsylvania and Tom

Wolf in his official capacity as governor of Pennsylvania (collectively, the

Commonwealth), we are presented with the parties' cross-Applications for Summary

Relief.  The parties seek declarations under the Declaratory Judgments Act (DJA)[1]

as to whether, *inter alia*, the Commonwealth's appropriation and use of money in

the Oil and Gas Lease Fund (Lease Fund) to pay for the general government

operations of the Department of Conservation and Natural Resources (DCNR) or

environmental initiatives unrelated to the Marcellus Shale region in northcentral

_____

[1] 42 Pa. C.S. §§7531-7541.

Pennsylvania violates the Commonwealth's trustee obligations under Article I, Section 27 of the Pennsylvania Constitution (Section 27 or the Environmental Rights Amendment).

The Foundation argues that money in the Lease Fund must be used exclusively for conservation and maintenance efforts at the lease sites where natural gas and oil was extracted and not for other conservation initiatives or general government operation purposes. On this basis, the Foundation asks this Court to declare as unconstitutional certain provisions of the General Appropriation Acts of 2017[2] and 2018,[3] and the 2017 legislative amendments to The Fiscal Code,[4] because these provisions divert funds away from the intended conservation and maintenance objectives. The Foundation also seeks a declaration that affirmative legislation and a detailed accounting of the Lease Fund are necessary. Conversely, the Commonwealth counters that the use of Lease Fund money for these other purposes is wholly consistent with its fiduciary duties and obligations as trustee of Pennsylvania's public natural resources and does not violate the Environmental Rights Amendment. The Commonwealth maintains that affirmative legislation is not required. For the reasons that follow, we grant in part and deny in part the parties' cross-Applications for Summary Relief.

---

[2] Act of July 11, 2017, P.L. 1279, *as amended*.

[3] Act of June 22, 2018, P.L. 1203, *as amended*. The Foundation is challenging Sections 104(P) and 1601 of both appropriation acts.

[4] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§1-1805. The specific amendments at issue are Sections 1601.2-E and 1726-G of The Fiscal Code, both of which were added by the Act of October 30, 2017, P.L. 725, *as amended*, 72 P.S. §§1601.2-E, 1726-G.

# I. Background

We begin by examining the Supreme Court's opinion in *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911 (Pa. 2017) (*PEDF II*), which laid the foundation for this suit. There, the Supreme Court examined the constitutionality of the 2009 legislative enactments to The Fiscal Code relating to funds generated from the leasing of State forests and parks for oil and gas exploration and extraction. The Supreme Court began its analysis by closely examining the contours of the Environmental Rights Amendment, which provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, §27. The Supreme Court determined that Section 27 "establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth is the trustee, and the people are the named beneficiaries." *PEDF II*, 161 A.3d at 931-32.

The Supreme Court continued that the "public natural resources" referenced in Section 27 "include the [S]tate forest and park lands leased for oil and gas exploration and . . . the oil and gas themselves." *PEDF II*, 161 A.3d at 931. "[S]tate parks and forests, including the oil and gas minerals therein, are part of the corpus of Pennsylvania's environmental public trust." *Id.* at 916.

The Commonwealth is the trustee and not the proprietor of public natural resources. *PEDF II*, 161 A.3d at 932. As trustee of the public natural resources, the Commonwealth has the duty to act toward the corpus of the trust with "loyalty, impartiality and prudence." *Id.* (citing *Robinson Township v.*

3

*Commonwealth*, 83 A.3d 901, 956-57 (Pa. 2013) (plurality)). This includes the "duty to prohibit the degradation, diminution, and depletion of our public natural resources." *Id.* at 933. In addition, the Commonwealth "must act affirmatively via legislative actions to protect the environment." *PEDF II*, 161 A.3d at 933 (citing *Robinson Township*, 83 A.3d at 957-58).

"Pennsylvania trust law dictates that *proceeds from the sale of trust assets* are trust principal and remain part of the corpus of the trust." *PEDF II*, 161 A.3d at 935 (citing *In re McKeown's Estate*, 106 A. 189, 190 (Pa. 1919)) (emphasis added). "When a *trust asset is removed from the trust*, all revenue received in exchange for the trust asset is returned to the trust as part of its corpus." *Id.* at 935 (citing *Bolton v. Stillwagon*, 190 A.2d 105, 109 (Pa. 1963)) (emphasis added).

The Supreme Court examined the types of proceeds generated from the Commonwealth's oil and gas leases of State forests and parks: royalties, rents and bonuses. *PEDF II*, 161 A.3d at 920. The Supreme Court determined that royalties "are unequivocally proceeds from the sale of oil and gas resources." *Id.* at 935. As such, funds generated from royalties are part of the trust corpus and must be committed to further the purposes, rights and protections afforded under Section 27, *i.e.*, to conserve and maintain our natural resources. *Id.* at 935. Insofar as certain legislative enactments appropriated royalty payments from the Lease Fund for non-conservation purposes, the Supreme Court declared them unconstitutional. *Id.*

However, the Supreme Court was less clear on how to categorize other revenue streams from State forest oil and gas leases, *i.e.*, rents and bonuses derived from the oil and gas leases. *PEDF II*, 161 A.3d at 935. The Supreme Court remanded the matter to this Court for further proceedings to determine if these funds

represent corpus or income under Pennsylvania's private trust principles in effect at the time of Section 27's ratification in 1971. *Id.* at 939.

In *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 214 A.3d 748 (Pa. Cmwlth. 2019) (*PEDF III*), *appeal filed, probable jurisdiction noted and oral argument granted*, (Pa., No. 64 MAP 2019, filed May 19, 2020), we examined whether rents and bonuses are compensation for the sale of natural resources and, thus, part of the trust corpus that must be used to conserve and maintain those natural resources, or income that may be used for non-trust purposes under Section 27. We determined that rents and bonuses were received as payments on a lease, not as consideration for the permanent severance of natural resources. *PEDF III*, 214 A.3d at 774.

Pursuant to the law in effect at the time Section 27 was ratified, the proper allocation of such payments is one-third to income and two-thirds to trust principal. *PEDF III*, 214 A.3d at 774. Payments designated as income are not required to remain in the trust corpus and may be used for non-trust purposes. *Id.* Consequently, we held that the challenged legislative enactments that diverted money from the Lease Fund to the General Fund were not facially unconstitutional under Section 27. *Id.* However, we noted that an accounting is necessary to ensure that only one-third of the proceeds allocable to income are removed from the Lease Fund for non-conservation purposes and that proceeds designated as trust principal are ultimately used in accordance with the trustee's obligation to conserve and maintain our natural resources. *Id.*

While *PEDF III* was pending in this Court, the Foundation instituted this action against the Commonwealth by filing a Petition for Review in the Nature of Declaratory Relief (Petition). The Petition contains 327 paragraphs, 7 counts and

5

18 subparts. The Foundation challenges the Commonwealth's conduct as trustee and certain legislative enactments allowing transfers and appropriations from the Lease Fund to other funds for alleged non-trust purposes as unconstitutional under Section 27. Petition for Review, ¶¶12, 15, 21-23, 34-36, 37-38. Following discovery, the parties filed cross-Applications for Summary Relief, which are now before this Court.[5]

## II. Cross-Applications for Summary Relief

The Foundation seeks the following declarations[6]: (1) the appropriations from the Lease Fund contained in Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 for the DCNR's government operations are facially unconstitutional; (2) the use of these appropriations for environmental initiatives beyond Pennsylvania's Marcellus Shale region are likewise facially unconstitutional; (3) the repeal of the act commonly referred to as the 1955 Oil and Gas Lease Fund Act (1955 Lease Fund Act)[7] is facially unconstitutional; (4) Section 1601.2-E of The Fiscal Code is facially unconstitutional; (5) Section 1726-G of The Fiscal Code is facially unconstitutional;

---

[5] We note that the Foundation filed its Petition and the parties filed their cross-Applications for Summary Relief and briefs in support before this Court filed *PEDF III* on July 29, 2019. The parties did not seek to amend their filings.

[6] The Foundation presented numerous overlapping issues with multiple subparts, which we have distilled as six overarching declarations.

[7] Act of December 15, 1955, P.L. 865, *formerly* 71 P.S. §§1331-1333, repealed by Section 20(2)(i) of the Act of October 30, 2017, P.L. 725. The subject matter of the 1955 Lease Fund Act was transferred to Section 1601.2-E of The Fiscal Code, which the Foundation also challenges.

6

and (6) affirmative legislation and a detailed accounting are required to ensure that the Lease Fund is protected and used in accordance with Section 27.[8]

The Commonwealth seeks counter-declarations that: (1) the use of Lease Fund money for the DCNR's general government operations is constitutional; (2) revenue from the extraction and sale of oil and gas from the State forests and parks is being used in a constitutional manner; (3) the repeal of the 1955 Lease Fund Act is constitutional; (4) Section 1601.2-E of The Fiscal Code is constitutional; (5) Section 1726-G of The Fiscal Code is constitutional; and (6) affirmative legislation is not needed for the Commonwealth to properly effectuate its Section 27 duties and responsibilities.

### III. Discussion
### A. Legal Standards
### 1. Summary Relief

We start our analysis by reviewing applicable legal standards. Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure provides that "the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b); *see Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017) ("The standard for granting summary relief turns upon whether the applicant's right to relief is clear. Summary relief on a petition for review is similar to the relief provided by a grant of summary judgment. Pa. R.A.P. 1532, Official Note.") (footnote omitted). "Summary judgment is appropriate where, after the close of pleadings, 'there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report.'" *Scarnati*, 173 A.3d at 1118 (quoting Pa. R.C.P. No. 1035.2(a)).

---

[8] In support of its Application, the Foundation relies on exhibits attached to its brief, which include, *inter alia*, the Commonwealth's Answer and Objections and Supplemental Answer and Objections to the First Set of Interrogatories. *See* Petitioner's Brief, Exhibits A and J.

Conversely, "[w]here there are material issues of fact in dispute or if it is not clear that the applicant is entitled to judgment as a matter of law, the application will be denied." *Sherman v. Kaiser*, 664 A.2d 221, 225 (Pa. Cmwlth. 1995). "A fact is considered material if its resolution could affect the outcome of the case under the governing law." *Hospital & Healthsystem Association of Pennsylvania v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013). The parties agree that there are no issues of material fact and that the issues are purely legal.

## 2. Declaratory Relief

Section 7533 of the DJA states: "Any person . . . *whose rights, status, or other legal relations are affected by a statute*, . . . *may have determined any question of construction or validity arising under the . . . statute . . .* and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa. C.S. §7533 (emphasis added). The DJA was enacted "to curb the courts' tendency to limit the availability of judicial relief to only cases where an actual wrong has been done or is imminent." *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 874 (Pa. 2010). The purpose of the DJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and, therefore, the DJA should "be liberally construed and administered." 42 Pa. C.S. §7541(a); *accord Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) (citation omitted); *Funk v. Wolf*, 144 A.3d 228, 251 (Pa. Cmwlth. 2016), *aff'd*, 158 A.3d 642 (Pa. 2017). Generally, granting or denying an action for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction. *Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991).

8

### 3. Constitutional Review

"When reviewing challenges to the constitutionality of Commonwealth actions under Section 27, the proper standard of judicial review lies in the text of Article I, Section 27 itself as well as the underlying principles of Pennsylvania trust law in effect at the time of its enactment." *PEDF II*, 161 A.3d at 930. With regard to facial challenges, "[a] *statute is facially unconstitutional only where no set of circumstances exist*[*s*] *under which the statute would be valid*." *Id.* at 938 n.31 (emphasis added). "In determining whether a law is facially invalid, [a court] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Id.* (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)). "A facial challenge 'must fail where the statute has a 'plainly legitimate sweep.'" *Id.* (quoting *Clifton v. Allegheny County*, 969 A.2d 1197, 1222 (Pa. 2009)).

"As with any constitutional challenge to legislation, the challenger bears the heavy burden of demonstrating that the statute 'clearly, plainly, and palpably violates the Constitution,' as we presume that our sister branches act in conformity with the Constitution." *PEDF II*, 161 A.3d at 929 (quoting *Stilp v. Commonwealth*, 905 A.2d 918, 939 (Pa. 2006)).

With these legal standards in mind, we review the relief requested in the parties' cross-Applications for Summary Relief.

### B. Cross-Applications for Summary Relief
### 1. General Appropriation Acts - Government Operations

The Foundation argues that Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 are facially unconstitutional because they

authorize the appropriation of Lease Fund money for general government operations. According to the Foundation, the Commonwealth cannot use any of the proceeds from oil and gas deposited in the Lease Fund to pay for the DCNR's general government operations, which include salaries and travel expenses, contract fees, vehicle and equipment purchases and maintenance, office rentals, and other similar expenses. Such use violates Section 27 by using trust assets for non-trust purposes. In *PEDF II*, the Supreme Court struck down similar appropriations as facially unconstitutional on this very basis. In addition, the Foundation argues that such use also violates Article I, Section 25 of the Pennsylvania Constitution (Section 25), which guards against transgressions of government, by using trust assets to replace General Fund revenue for general government operations as beyond enumerated authority. By appropriating trust principal to governmental operations, the Commonwealth is acting as a proprietor of the funds, not as a trustee, and has failed to exercise its fiduciary duties of loyalty, impartiality and prudence.

The Commonwealth responds that not all of the money in the Lease Fund constitutes trust corpus that must be spent on trust purposes. Nevertheless, it defends that the appropriation of trust monies for the DCNR's general operating expenses does not violate Sections 27 or 25. Conservation and maintenance activities are not accomplished in a vacuum: they require people and equipment. The DCNR's main purpose is effectuating Section 27 and ensuring conservation and maintenance of Pennsylvania's parks and forests. *See* Section 101(b)(1) of the Conservation and Natural Resources Act (CNRA).[9] By appropriating Lease Fund money to the DCNR for general operations, the DCNR is able to carry out its duties and responsibilities as a Section 27 trustee. Thus, the Commonwealth seeks a

---

[9] Act of June 28, 1995, P.L. 89, *as amended*, 71 P.S. §1340.101(b)(1).

10

declaration that its current usage of the Lease Fund is wholly consistent with its Section 27 trustee responsibilities.

Section 104(P) of both the General Appropriation Act of 2017 and the General Appropriation Act of 2018 provides, with emphasis added:

> The following sums set forth in this act, or as much thereof as may be necessary, are hereby *specifically appropriated from the [] Lease Fund to the hereinafter named agencies of the Executive Department of the Commonwealth for the payment of salaries, wages or other compensation and travel expenses of the duly appointed officers and employees of the Commonwealth, for the payment of fees for contractual services rendered, for the purchase or rental of goods and services for payment and any other expenses, as provided by law or by this act,* necessary for the proper conduct of the duties, functions and activities and for the purposes hereinafter set forth for the fiscal year
> . . . .

In turn, Section 1601 of the General Appropriation Act of 2017 appropriated the following amounts to the DCNR: $50,000,000 for general operations, $7,739,000 for State parks operations and $3,552,000 for State forests operations, for a total appropriation of $61,291,000 for the 2017-2018 fiscal year. Section 1601 of the General Appropriation Act of 2018 appropriated to the DCNR: $37,045,000 for general operations, $7,555,000 for State parks operations and $4,198,000 for State forests operations, for a total appropriation of $48,798,000 for the 2018-2019 fiscal year.

In *PEDF II*, the Supreme Court examined the Commonwealth's appropriation and use of funds belonging to the trust corpus for the DCNR's general

11

operations as contained in Sections 1602-E[10] and 1603-E[11] of The Fiscal Code. These sections authorized the appropriation of up to $50,000,000 of royalties from the Lease Fund to the DCNR and authorized appropriations and transfers from the Lease Fund to the General Fund. The only limitations were: (1) the General Assembly was to "consider" allocating funds to municipalities impacted by a Marcellus Shale well and (2) the DCNR was to "give preference to the operation and maintenance of State parks and forests" rather than to conservation purposes. *PEDF II*, 161 A.3d at 937-38.

The Supreme Court determined that these appropriations fell short of the Commonwealth's Section 27 trustee obligations. The Court noted that the

---

[10] Added by the Act of October 9, 2009, P.L. 537, *as amended*, 72 P.S. §1602-E. This section provides:

> Notwithstanding any other provision of law and except as provided in section 1603-E [providing for an annual appropriation to the DCNR of up to $50,000,000 of royalties], no money in the [Lease Fund] *from royalties* may be expended unless appropriated or transferred to the General Fund by the General Assembly from the fund. In making appropriations, the General Assembly shall consider the adoption of an allocation to municipalities impacted by a Marcellus well.

72 P.S. §1602-E (emphasis added).

[11] Added by the Act of October 9, 2009, P.L. 537, *as amended*, 72 P.S. §1603-E. This section provides:

> Subject to the availability of money in the fund following transfers, up to $50,000,000 from the [Lease Fund] *from royalties* shall be appropriated annually to the [DCNR] to carry out the purposes set forth in the [1955 Lease Fund Act]. The [DCNR] shall give preference to the operation and maintenance of State parks and forests.

72 P.S. §1603-E (emphasis added).

Commonwealth was using Section 27 trust assets to replace General Fund appropriations to the DCNR for its annual operations, thereby reducing the amount of monies available to the DCNR to undertake conservation activities.[12] *PEDF II*, 161 A.3d at 923. The "revenue generated by oil and gas leases [was] spent in a multitude of ways entirely unrelated to the conservation and maintenance of our public natural resources." *Id.* at 937.

The Supreme Court opined that oil and gas royalties are assets of the trust and, as such, may not be spent on non-trust purposes. *PEDF II*, 161 A.3d at 938. The legislative enactments lacked any "indication that the General Assembly considered the purposes of the public trust or exercised reasonable care in managing the royalties in a manner consistent with its Section 27 trustee duties." *Id.* at 937. The Court opined: "They plainly ignore the Commonwealth's constitutionally imposed fiduciary duty to manage the corpus of the environmental public trust for the benefit of the people to accomplish its purpose—conserving and maintaining the

---

[12] The Court observed:

> The 2013 General Appropriations Act decreased the appropriation to the DCNR from the General Fund and increased the appropriation from the Lease Fund to the DCNR, *resulting in a larger portion of monies from the Lease Fund being used to pay for the DCNR's operational expenses, which had previously been funded by the General Fund, and thus reduced the amount of monies available for the DCNR's conservation activities*.

> The 2014-2015 General Appropriations Act again included increased appropriations of royalties from the Lease Fund to the DCNR that were mirrored by decreased appropriations from the General Fund to the DCNR.

*PEDF II*, 161 A.3d at 923 (emphasis added).

13

corpus by, *inter alia*, preventing and remedying the degradation, diminution and depletion of our public natural resources." *Id.* at 938.

The Supreme Court continued: "[T]hese legislative enactments permit the trustee to use trust assets for non-trust purposes, a clear violation of the most basic of a trustee's fiduciary obligations." *PEDF II*, 161 A.3d at 938. "[T]he trustee may use the assets of the trust only for purposes authorized by the trust or necessary for the preservation of the trust; other uses are beyond the scope of the discretion conferred, even where the trustee claims to be acting solely to advance other discrete interests of the beneficiaries." *Id.* (quoting *Robinson Township*, 83 A.3d at 978); *see* Section 7780 of the Uniform Trust Act, 20 Pa. C.S. §7780 (providing that the duty to administer a trust with prudence involves "considering the purposes" of the trust and "the exercise of reasonable care, skill, and caution"). Thus, the Supreme Court declared Sections 1602-E and 1603-E of The Fiscal Code as facially unconstitutional. *PEDF II*, 161 A.3d at 939.

However, the legislative enactments declared unconstitutional in *PEDF II* are distinguishable from the appropriations at issue here in one key respect. Sections 1602-E and 1603-E of The Fiscal Code dealt exclusively with oil and gas *royaltie*s, *i.e.*, trust principal, and authorized the transfer of *royalties* from the Lease Fund to the General Fund for non-trust purposes. In contrast, the appropriations at issue here are not royalty-specific. In fact, the General Appropriation Acts of 2017 and 2018 do not identify whether the funds are royalties, rents, bonuses, or interest from the oil and gas leases or from other sources within the Lease Fund. *See* Section 1601.2-E(b) of The Fiscal Code, 72 P.S. §1601.2-E(b); *see also* Petitioner's Brief, Exhibit A, Commonwealth's Answer and Objections to the Foundation's First Set

14

of Interrogatories, ¶¶6a, 7a (identifying rents, bonuses and interest from the oil and gas leases as well as vehicle sales and other statutory deposits in the Lease Fund).

In this regard, the provisions here are more similar to the other provisions at issue in *PEDF II*, namely Sections 1604-E[13] and 1605-E[14] of The Fiscal Code and Section 1912 of the Supplemental General Appropriations Act of 2009.[15] These provisions authorized the transfer of money in the Lease Fund to the General Fund. However, these transfers were not royalty-specific. Recognizing that the Lease Fund also contained rents and bonuses generated from the oil and gas leases, the Supreme Court remanded the matter to this Court to determine if these proceeds constituted trust principal or income.

On remand, we determined that some of the proceeds represented income. *PEDF III*, 214 A.3d at 774. While 100% of royalties constitute trust

---

[13] Added by the Act of October 9, 2009, P.L. 537, 72 P.S. §1604-E. Section 1604-E provides: "Notwithstanding section 1603-E or any other provision of law, in fiscal year 2009-2010 *the amount of $60,000,000 shall be transferred from the [Lease Fund] to the General Fund*." 72 P.S. §1604-E (emphasis added).

[14] Added by the Act of July 6, 2010, P.L. 279, 72 P.S. §1605-E. Section 1605-E provides:

> (a) Fiscal year 2010-2011.--Notwithstanding section 1603-E or any other provision of law, in fiscal year 2010-2011, *the amount of $180,000,000 shall be transferred from the [Lease Fund] to the General Fund*.

> (b) Fiscal year 2014-2015.--Notwithstanding section 1603-E or any other provision of law, in fiscal year 2014-2015, *the amount of $95,000,000 shall be transferred from the [Lease Fund] to the General Fund*.

72 P.S. §1605-E (emphasis added).

[15] Act of October 9, 2009, P.L. 779. Section 1912 of the Supplemental General Appropriations Act of 2009 directed the transfer of $143,000,000 from the Lease Fund to the General Fund.

15

principal, only two-thirds of proceeds derived from rents and bonuses on the oil and gas leases represent trust principal; the other one-third is income. *Id.* There are no Section 27 restrictions on the appropriation and use of income derived from the oil and gas leases. *Id.* Because the Lease Fund contains both trust principal and income from the gas leases as well as other sources of revenue, we ruled that Sections 1604-E and 1605-E of The Fiscal Code and Section 1912 of the Supplemental General Appropriations Act of 2009 were not facially unconstitutional. *PEDF III*, 214 A.3d at 774. For the same reasons espoused in *PEDF III*, we likewise conclude that the appropriations here of non-specified monies from the Lease Fund to the DCNR for governmental operations are not facially unconstitutional under Section 27.

The Foundation also claims that the use of the Lease Fund to fund general governmental operations to replace General Fund revenue violates Section 25. Section 25 provides:

> Reservation of powers in people
>
> To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

Pa. Const. art. I, §25. This provision has been described as a "reservation of rights in the people." *Grimaud v. Commonwealth*, 865 A.2d 835, 845-46 (Pa. 2005). It safeguards the rights enumerated in Article I, including Section 27, by establishing those rights to be "inviolate," such that they "may not be transgressed by government." *Gondelman v. Commonwealth*, 554 A.2d 896 (Pa. 1989) (citing *Spayd v. Ringing Rock Lodge No. 665, Brotherhood of Railroad Trainmen*, 113 A. 70 (Pa. 1921)); *see Yanakos v. UPMC*, 218 A.3d 1214, 1231 (Pa. 2019), *reargument denied*, 224 A.3d 1255 (Pa. 2020) (Donohue, J., concurring) (It "invokes special protections

to safeguard the rights set forth in Article I."). A cause of action arises under the Pennsylvania Constitution for the violation of rights guaranteed under Article I. *Erdman v. Mitchell*, 56 A. 327, 331 (Pa. 1903). No affirmative legislation is needed for a vindication of those rights in the civil courts. *Id.*; *accord PEDF II*, 161 A.3d at 937. This means that the public trust provisions of the Environmental Rights Amendment are self-executing and do not require implementing legislation for enforcement. *PEDF II*, 161 A.3d at 937.

The Foundation's Section 25 argument misses the mark in two respects. First, the constitutional issue at hand is not whether the Commonwealth substituted General Fund revenue with Lease Fund money to finance the DCNR's general operations. Rather, the issue is whether the appropriation and use of Lease Fund money for the DCNR's general operations violates Section 27. Second, the Foundation has set forth a viable cause of action under the Pennsylvania Constitution to vindicate rights asserted under Section 27 as guaranteed by Section 25. *PEDF III*. However, having determined that the appropriations at issue are not facially unconstitutional under Section 27, the Foundation's Section 25 claim fails by extension.

In sum, because the Lease Fund contains both trust principal and other deposits, we cannot declare that the appropriations contained in Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 for the DCNR's government operations are facially unconstitutional. By the same token, we are also unprepared to grant the Commonwealth's sweeping request that its current usage is wholly consistent with its Section 27 trustee responsibilities. Such a declaration requires an as-applied analysis, which we are not prepared to address in this matter.

17

Therefore, we deny both the Foundation's and the Commonwealth's cross-Applications in this regard.

## 2. General Appropriation Acts - Other Environmental Initiatives

In addition, the Foundation challenges Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 as facially unconstitutional on the basis that they authorize the appropriation of money from the Lease Fund to the DCNR to fund State park and forest operations without restricting such use to Pennsylvania's Marcellus Shale region. The Foundation contends that Lease Fund money cannot be used to fund environmental initiatives that are unrelated to the region impacted by a Marcellus well. The extraction and sale of oil and gas requires large-scale industrial development that degrades, depletes and diminishes the State lands. This industrial development has and will continue to negatively impact the forest and water ecosystems in the Marcellus Shale region. Therefore, the Foundation maintains that any proceeds derived from this development must be dedicated exclusively to mitigate the harm caused and to restore natural resources of this region. Otherwise, these public natural resources will not be conserved or maintained as mandated by Section 27. By utilizing proceeds from the oil and gas leases for any use other than conservation programs to rehabilitate the Marcellus Shale region, the Commonwealth violates Section 27 as well as the Supreme Court's directives in *PEDF II* regarding the use of Section 27 trust funds.

The Commonwealth counters that there is no requirement that money derived from the State's oil and gas leases must be used in specific areas of the Commonwealth or that they be specifically used in Pennsylvania's Marcellus Shale region. In *PEDF II*, the Supreme Court held that the appropriation of trust funds to agencies or initiatives other than the DCNR "would not run afoul of the constitution"

18

where the funds are still dedicated to effectuating Section 27. *PEDF II*, 161 A.3d 939. By the same logic, the use of Lease Fund money for enhancement, remediation, or conservation of public natural resources in areas other than those outlined by the Foundation is constitutional because such use is not a diversion of proceeds to a non-trust purpose.

In *PEDF II*, the Supreme Court held that the Commonwealth has a constitutional obligation "to prevent and remedy the degradation, diminution, or depletion of the public natural resources," particularly State forests and parks impacted by oil and gas wells. 161 A.3d at 932 (quoting *Robinson Township*, 83 A.3d at 957). While we appreciate that the money derives from oil and gas wells, the environmental public trust embraces more than Pennsylvania's Marcellus Shale region from which the oil and gas was extracted. Indeed, our public natural resources include "clean air and pure water," as well as "natural, scenic, historic and esthetic values of the environment." Pa. Const. art. I, §27; *accord Robinson Township*, 83 A.3d at 955 ("the concept of public natural resources includes not only State-owned lands, waterways, and mineral reserves, but also resources that implicate the public interest, such as ambient air, surface and ground water, wild flora, and fauna (including fish)").

Even assuming that we are dealing with corpus assets, the notion that *all* trust principal derived from the extraction and sale of oil and gas must be applied exclusively toward public land impacted by oil and gas is unfounded. As a trustee, the Commonwealth has discretion to use corpus funds provided those funds are used to further its trustee duties in accomplishing Section 27 objectives. *See PEDF II*, 161 A.3d at 933. The vast proceeds derived from the oil and gas leases may be used in a variety of ways to benefit a wide array of Pennsylvania's cherished public

19

natural resources. *See id.* Pennsylvania is facing many environmental threats from climate change to polluted waters to invasive species. To narrowly restrict the use of the money garnered from the oil and gas leases to the situs of extraction is myopic. As the Supreme Court opined, "the General Assembly would not run afoul of the constitution by appropriating trust funds *to some other initiative or agency dedicated to effectuating Section 27.*" *Id.* at 939.

For these reasons, we deny the Foundation's request for a declaration that Lease Fund money cannot be used to fund environmental initiatives that are unrelated to the Marcellus Shale region. We grant the Commonwealth's declaratory request that Lease Fund money, including trust principal, may be expended on other environmental conservation initiatives because such use is not a diversion of funds to a non-trust purpose.[16] We conclude that the appropriations contained in Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018 to the DCNR for the operation of State parks and forests are not facially unconstitutional.

### 3. Repeal of the 1955 Lease Fund Act

Next, the parties dispute whether the Commonwealth violated Section 27 and its fiduciary duties thereunder by repealing the 1955 Lease Fund Act. The

---

[16] However, we caution the Commonwealth that the failure to remedy the degradation, diminution, or depletion of the State forests and parks impacted by Marcellus wells - the very public resources harmed in order to generate these funds - may constitute a failure to preserve the trust and a dereliction of its fiduciary duties under Section 27. *See PEDF II*, 161 A.3d at 933 ("Although a trustee is empowered to exercise discretion with respect to the proper treatment of the corpus of the trust, that discretion is limited by the purpose of the trust and the trustee's fiduciary duties . . . "; "[t]he trustee may use the assets of the trust 'only for purposes authorized by the trust or necessary for the preservation of the trust'"); Section 7780.4 of the Uniform Trust Act, 20 Pa. C.S. §7780.4 ("The trustee shall exercise a discretionary power in good faith and in accordance with the provisions and purposes of the trust and the interests of the beneficiaries . . . .").

Foundation argues that Section 1601.2-E of The Fiscal Code violates Section 27 on its face by repealing the 1955 Lease Fund Act without replacing any safeguards to ensure that the public natural resources are conserved and maintained or otherwise guaranteeing that the Commonwealth, in its administration of the Lease Fund, will comply with its trustee duties and responsibilities under Section 27. In addition, the Foundation contends that the Commonwealth has failed to take the basic step of evaluating the impact of the repeal of the 1955 Lease Fund Act on the environment. The Foundation argues that the repeal violates Section 27 on its face because it lacks any indication that the Commonwealth considered or even contemplated its duties as the trustee of the environmental public trust by eliminating the protections contained therein.

The Commonwealth counters that the repeal of the Lease Fund and replacement with new provisions does not run afoul of Section 27. The Foundation wrongfully attempts to impose a requirement upon the Commonwealth that it must provide an evaluation on the immediate or long-term impacts of its decision to repeal the 1955 Lease Fund Act. There is no such requirement.

The 1955 Lease Fund Act established the Lease Fund and provided:

> Section 1. All rents and royalties from oil and gas leases of any land owned by the Commonwealth, except rents and royalties received from game and fish lands, shall be placed in a special fund to be known as the "Oil and Gas Lease Fund" *which fund shall be exclusively used for conservation, recreation, dams, or flood control* or to match any Federal grants which may be made for any of the aforementioned purposes.

Section 2. It shall be within the discretion of the Secretary of Forests and Waters[17] to determine the need for and the location of any project authorized by this act. The Secretary of Forests and Waters shall have the power to acquire in the name of the Commonwealth by purchase, condemnation or otherwise such lands as may be needed.

Section 3. All the moneys from time to time paid into the "[] Lease Fund" are specifically appropriated to the Department of Forests and Waters to carry out the purposes of this act.

*Former* 71 P.S. §§1331-1333 (emphasis added).

In 2017, the General Assembly repealed the 1955 Lease Fund Act and transferred the subject matter to Section 1601.2-E of The Fiscal Code. Section 1601.2-E provides:

(a) Continuation.--The [Oil and Gas Lease Fund] is continued as a special fund in the State Treasury.

(b) Sources.--The following shall be deposited into the fund:

(1) Rents and royalties from oil and gas leases of land owned by the Commonwealth, except rents and royalties received from game and fish lands.

(2) Amounts as provided under [S]ection 5 of the act of October 8, 2012 (P.L. 1194, No. 147), known as the Indigenous Mineral Resources Development Act[, 71 P.S. §1357.5].

(3) Any other money appropriated or transferred to the fund.

(c) Use.--Money in the fund may only be used as provided under subsection (e) or as annually appropriated by the

---

[17] The General Assembly transferred the powers and duties of the Department of Forests and Waters under this section to the DCNR. *See* Section 304(c) of the CNRA, 71 P.S. §1340.304(c).

General Assembly. In making an appropriation from the fund, the General Assembly shall consider the Commonwealth's trustee duties under section 27 of Article I of the Constitution of Pennsylvania.

(d) Priority.--Money appropriated from the fund under a General Appropriation Act or other appropriation act shall be distributed prior to allocations under subsection (e).

(e) Annual transfers.--The following apply:

(1)(i) Except as provided under subparagraph (ii), for the 2017-2018 fiscal year and each fiscal year thereafter, $20,000,000 shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Environmental Stewardship Fund.

(ii) No amount shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Environmental Stewardship Fund for the 2019-2020 and 2020-2021 fiscal year.

(2) For the 2017-2018 fiscal year and each fiscal year thereafter, $15,000,000 shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Hazardous Sites Cleanup Fund.

72 P.S. §1601.2-E.

The absence of safeguards within Section 1601.2-E does not render this provision facially unconstitutional. The Commonwealth has a *constitutional* obligation to ensure that trust proceeds are used to conserve and maintain the corpus of the trust, regardless of any *statutory* safeguards. However, Section 27 "does not impose duties on the political branches to enact specific affirmative measures to promote clean air, pure water, and the preservation of the different values of our environment[.]" *Robinson Township*, 83 A.3d at 951-52.

Further, there is no requirement for the Commonwealth, or the General Assembly, to provide the Foundation or the public with any written evaluation prior

23

to amending the Lease Fund or other legislative enactments. *See Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 700 (Pa. Cmwlth. 2018) (holding a municipal trustee was under no obligation to undertake any "pre-enactment environmental, health, and safety" evaluation for Section 27 purposes). Even a liberal reading of *PEDF II* and *Robinson Township* does not imply such a requirement. Thus, we deny the Foundation's Application and grant the Commonwealth's cross-Application upon concluding that the repeal of the 1955 Lease Fund Act is not facially unconstitutional.

### 4. Section 1601.2-E of The Fiscal Code
### a. Section 1601.2-E(a)

Next, the Foundation argues that Section 1601.2-E(a) violates Section 27 by eliminating the Lease Fund, over which the DCNR had exclusive control, and creating a new fund as a special fund, without any recognition or restriction that funds derived from the extraction and sale of oil and gas must comply with the Section 27 mandate.

The Commonwealth responds that subsection (a) does not establish a new Lease Fund. Rather, it merely continued the Lease Fund. Furthermore, the DCNR is not the only agency entrusted with Section 27 trustee duties.

Section 1601.2-E(a) of The Fiscal Code provides: "Continuation.--The [Lease Fund] is continued as a special fund in the State Treasury." 72 P.S. §1601.2-E(a). Contrary to the Foundation's claims, subsection (a) did not establish a "new" Lease Fund. Rather, it simply "*continued*" the Lease Fund previously established in the 1955 Lease Fund Act as a special fund. 72 P.S. §1601.2-E(a). According to the Commonwealth, the Lease Fund continues to bear the same fund number (No. 016)

24

since it was first established.  *See* Petitioner's Brief, Exhibit A, Commonwealth's Answer and Objections to the Foundation's First Set of Interrogatories, ¶5a.

Although subsection (a) no longer contains the *statutory* requirement that the fund must "be exclusively used" by the DCNR "for conservation, recreation, dams, or flood control," Section 27's constitutional requirement that trust principal must be used for trust purposes nevertheless prevails.  *See PEDF II*.  The omission of this statutory language does not render Section 1601.2-E(a) facially unconstitutional.  The legislature retains "authority to control the fate of special funds in order to serve the changing needs of the government" provided that doing so does not contravene a specific constitutional provision controlling the fund.  *Hospital & Healthsystem*, 77 A.3d at 604-605.  Moreover, "the Lease Fund is not a constitutional trust fund and need not be the exclusive repository for proceeds from oil and gas development."  *PEDF II*, 161 A.3d at 939.

As for the removal of the DCNR's exclusive control over this special fund, "the DCNR is not the only agency committed to conserving and maintaining our public natural resources."  *PEDF II*, 161 A.3d at 939.  "[P]ublic trustee duties were delegated concomitantly to all branches and levels of government in recognition that the quality of the environment is a task with both local and statewide implications."  *Id.* at 919.  Indeed, "all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality."  *Id.* at 931 n.23; *accord Robinson Township*, 83 A.3d at 957 ("duties and powers attendant to the trust are not vested exclusively in any single branch of Pennsylvania's government").  "[T]he General Assembly would not run afoul of the constitution by appropriating trust funds to *some other . . . agency* dedicated to effectuating Section 27."  *PEDF II*, 161 A.3d at

25

939. For these reasons, we conclude that Section 1601.2-E(a) is not facially unconstitutional.

### b. Section 1601.2-E(b)

Next, the Foundation argues that Section 1601.2-E(b) is facially unconstitutional because it violates Section 27 and trust law by commingling the protected trust principal with other revenue. According to the Foundation, the Commonwealth is neglecting its trustee obligations by not maintaining separate accounts and keeping adequate records to ensure that Section 27 trust funds are used for trust purposes.

The Commonwealth defends that there is no requirement to maintain separate accounts.

Section 1601.2-E(b) of The Fiscal Code provides:

> (b) Sources.--The following shall be deposited into the [Lease Fund]:
>
>   (1) Rents and royalties from oil and gas leases of land owned by the Commonwealth, except rents and royalties received from game and fish lands.
>
>   (2) Amounts as provided under section 5 of the act of October 8, 2012 (P.L. 1194, No. 147), known as the Indigenous Mineral Resources Development Act.
>
>   (3) Any other money appropriated or transferred to the fund.

72 P.S. §1601.2-E(b).

Section 1601.2-E(b), on its face, directs deposits into the Lease Fund, which results in a mixture of trust principal and income. As the Supreme Court held, "the Lease Fund is not a constitutional trust fund and need not be the exclusive repository for proceeds from oil and gas development." *PEDF II*, 161 A.3d at 939.

26

By the same token, there is no restriction that the Lease Fund must be comprised solely of corpus funds derived from oil and gas. Although Section 1601.2-E(b) does not identify nor account for the funds going into and out of the Lease Fund, such omissions do not render this section facially unconstitutional. This is because if the General Assembly chose to appropriate all monies in the Lease Fund for trust purposes, there would be no Section 27 violation. The constitutional problem arises only when trust assets are applied to non-trust purposes. *See PEDF II*. Although we agree with the Foundation a clear accounting and identification of corpus funds from the oil and gas leases are necessary to ensure that these funds are properly used in strict compliance with Section 27, which we discuss below, the absence of such a mandate within Section 1601.2-E(b) itself does not render this provision facially unconstitutional.

### c. Section 1601.2-E(c)

Next, the Foundation argues that Section 1601.2-E(c) violates Section 27 as well as Section 25 by failing to provide that the funds must be used to conserve and maintain the corpus by preventing and remedying the degradation, diminution and depletion of our public natural resources. The Foundation asserts that there are no limitations on the use of money in the Lease Fund to comply with Section 27. Subsection (c) requires no evaluation prior to the use of funds generated from the extraction and sale of oil and gas.

The Commonwealth defends that subsection (c) clearly evidences that the General Assembly contemplated and faithfully exercised its fiduciary obligations as trustee by mandating that the legislature "consider the Commonwealth's trustee duties under [S]ection 27" when appropriating funds. The appropriation of trust

27

monies for an agency's general operating expenses does not violate Sections 27 or 25 of the Pennsylvania Constitution.

> Section 1601.2-E(c) of The Fiscal Code provides:
>
> (c) Use.--Money in the [Lease] [F]und may only be used as provided under subsection (e) *or as annually appropriated by the General Assembly. In making an appropriation from the fund, the General Assembly shall consider the Commonwealth's trustee duties under section 27 of Article I of the Constitution of Pennsylvania.*

72 P.S. §1601.2-E(c) (emphasis added).

Subsection (c) merely requires the General Assembly to "consider" the Commonwealth's trustee duties when making appropriations. *Id.* In *PEDF II*, the Supreme Court held that it is not enough to simply "consider" allocating the corpus funds for trust purposes in declaring Section 1602-E of The Fiscal Code unconstitutional. *PEDF II*, 161 A.3d at 937 ("Section 1602-E merely requires the General Assembly to 'consider' allocating these funds to municipalities impacted by a Marcellus well."). However, as discussed above, Section 1602-E dealt with the appropriation and transfer of *royalties* in the Lease Fund, which belonged to the trust corpus.

Here, Section 1601.2-E(c) of The Fiscal Code authorizes the appropriation or transfer of monies within the Lease Fund without any indication as to the specific nature of the funds, *i.e.*, royalties, rents, bonuses, interest or other sources. Because the Lease Fund is comprised of both restricted corpus and unrestricted deposits, we cannot conclude that Section 1601.2-E(c) violates Section 27 on its face. Because the Foundation's Section 25 claim is premised on a Section 27 violation, it likewise fails. Thus, we conclude that subsection (c) is not facially unconstitutional under Section 27 or Section 25 of the Pennsylvania Constitution.

28

Next, the Foundation argues that the transfers from the Lease Fund to the Marcellus Legacy Fund for subsequent distribution to the Environmental Stewardship Fund and Hazardous Sites Cleanup Fund violates Section 27. The Lease Fund transfers are used to replace insufficient landfill fees and tax revenues. These funds are "untethered to the protection of the public natural resources in the State [f]orests and [p]arks of northcentral Pennsylvania impacted to generate this money." Petitioner's Brief at 88. The DCNR does not exercise control over these funds.

The Commonwealth counters that the transfers to other Commonwealth agencies or initiatives, including the Environmental Stewardship Fund and Hazardous Sites Cleanup Fund, do not violate Section 27 because the appropriations are devoted to a multitude of conservation and maintenance efforts. Again, the issue is not whether the funds replace other revenue streams but whether the funds are devoted to trust purposes. The DCNR is not the only Section 27 trustee.

Section 1601.2-E(e) of The Fiscal Code provides:

(e) Annual transfers.--The following apply:

(1)(i) Except as provided under subparagraph (ii), for the 2017-2018 fiscal year and each fiscal year thereafter, $20,000,000 shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Environmental Stewardship Fund.

(ii) No amount shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Environmental Stewardship Fund for the 2019-2020 and 2020-2021 fiscal year.

---

[18] The Foundation does not challenge subsection (d) of Section 1601.2-E.

(2) For the 2017-2018 fiscal year and each fiscal year thereafter, $15,000,000 shall be transferred from the fund to the Marcellus Legacy Fund for distribution to the Hazardous Sites Cleanup Fund.

72 P.S. §1601.2-E(e).

As discussed above, it is not clear whether the transfers from the Lease Fund to the Marcellus Legacy Fund, the Environmental Stewardship Fund and Hazardous Sites Cleanup Fund are trust principal or income. Even assuming the transfers represent trust principal belonging to the environmental trust, the Foundation is not entitled to the declaration it seeks. First, the use of trust assets to replace insufficient revenue is not a *per se* violation of Section 27. Section 27 is violated when trust assets are used for non-trust purposes. *PEDF II*, 161 A.3d at 938. Second, we reiterate that utilization of the trust assets on conservation and maintenance initiatives beyond the Marcellus Shale region do not run afoul of Section 27. *Id.* at 939. Third, the DCNR is not the only Section 27 trustee or the sole agency responsible for conserving and maintaining Pennsylvania's public natural resources. *Id.* at 931 n.23. Consequently, there is no basis upon which to declare subsection (e) facially unconstitutional.

Thus, we deny the Foundation's Application for Summary Relief and grant the Commonwealth's cross-Application upon concluding that the challenged provisions of Section 1601.2-E of The Fiscal Code are not facially unconstitutional.

### 5. Section 1726-G of The Fiscal Code

Next, the Foundation argues that the transfer in Section 1726-G is unconstitutional insofar as the Commonwealth authorized the transfer of $10,000,000 from the Keystone Recreation, Park and Conservation Fund (Keystone

Fund)[19] to the General Fund.  The Keystone Fund is used primarily by the DCNR to improve the public natural resources of our parks and forests.  The Keystone Fund should not be used to fill budget gaps in the General Fund caused by insufficient tax revenue.  The Commonwealth made the determination without any public notice or evaluation regarding the impact of this transfer on our public natural resources. Combined with the loss of control over the Lease Fund, the Foundation argues that the transfer from the Keystone Fund further impedes the DCNR's ability to carry out conservation and maintenance projects on our State forests and parks.

The Commonwealth responds that Section 1726-G of The Fiscal Code does not violate the Pennsylvania Constitution.  These funds are not corpus funds. Just as the diversion of funds from the Lease Fund does not constitute a facial violation of the Commonwealth's Section 27 duties and responsibilities, the diversion of money from the Keystone Fund does not violate the Commonwealth's responsibilities as a Section 27 trustee.

Section 1726-G of The Fiscal Code directs the following transfers:

During the 2017-2018 fiscal year, $300,000,000 shall be transferred from amounts available in special funds and restricted accounts to the General Fund. The transfers under this section shall be in accordance with the following:

(1) The Secretary of the Budget shall transmit to the State Treasurer a list of amounts to be transferred from special funds and restricted accounts to the General Fund.

(2) Upon receipt of the list under paragraph (1), the State Treasurer shall cause the transfers under paragraph (1) to occur.

_____

[19] The Keystone Fund was created by the Keystone Recreation, Park and Conservation Fund Act (Keystone Act), Act of July 2, 1993, P.L. 359, *as amended*, 32 P.S. §§2011-2024.

72 P.S. §1726-G. Of the $300,000,000, the Commonwealth authorized the transfer of $10,000,000 from the Keystone Fund to the General Fund. *See* Petitioner's Brief, Exhibit J, Commonwealth's Supplemental Answer and Objections to First Set of Interrogatories, ¶16.

In the Keystone Act, the General Assembly recognized that "the land and water resources of this Commonwealth as described in [S]ection 27" are fundamental to the health and welfare of the people of Pennsylvania. Section 2(1) of the Keystone Act, 32 P.S. §2012(1). One of the objectives of the Keystone Act is to provide a "predictable and stable source of funding" for "parks, natural areas, recreation, historic preservation facilities, educational facilities, zoos and public libraries in this Commonwealth." Section 2(6) of the Keystone Act, 32 P.S. §2012(6). Section 3 of the Keystone Act, 32 P.S. §2013, identifies the DCNR as one of the agency recipients of an allocation from the Keystone Fund.

Unlike the Lease Fund, the Keystone Fund is not funded by money from the extraction and sale of oil and gas from Pennsylvania's natural resources. Rather, the Keystone Fund is funded by "proceeds from the sale of bonds or notes" and "the monthly transfer of a portion of the State Realty Transfer Tax." Section 4(b) of the Keystone Fund, 32 P.S. §2014(b); *see* Section 12 of the Keystone Act, 32 P.S. §2022 (the DCNR is allocated $17,000,000 from bond revenues and 30% of realty transfer tax revenues). In short, we are not dealing with money belonging to the trust corpus. Consequently, the transfer of funds from the Keystone Fund to the General Fund does not run afoul of Section 27 or impugn the Commonwealth's fiduciary duties as trustee. *See PEDF II*.

As for the Commonwealth's failure to provide notice or evaluate the impact on our public natural resources, as discussed above, there is no requirement

for public notice or an evaluation as to the potential impacts of such transfers. *See Frederick*, 196 A.3d at 700. Although we understand that this transfer decreased the amount of funds available for the DCNR's conservation activities, the transfer of unrestricted money from one fund to another is a matter of legislative prerogative. Thereafter, the administration of the appropriations is a function of the Commonwealth. Section 4(c) of the Keystone Fund, 32 P.S. §2014(c); *see Common Cause of Pennsylvania v. Commonwealth*, 668 A.2d 190, 206 n.21 (Pa. Cmwlth. 1995). For this Court to hold otherwise would be an unconstitutional encroachment on the powers of the executive branch. *See Common Cause.* "[W]e must respect the legislative prerogative to control the State's finances, a prerogative that is subject only to constitutional limitations." *School District of Newport Township in Luzerne County v. State Tax Equalization Board*, 79 A.2d 641, 643 (Pa. 1951). We, therefore, conclude that Section 1726-G is not facially unconstitutional, and we deny the Foundation's Application and grant the Commonwealth's cross-Application in this regard.

## 6. Affirmative Legislation & Accounting

Finally, the Foundation asks this Court for a declaration that affirmative legislation is required to ensure that the Lease Fund has protective limitations. Specifically, the Foundation seeks new legislation to ensure that the money derived from the oil and gas leases in the Marcellus Shale region will be: used only in that region; available to conserve these resources for future generations; and appropriated to the DCNR for these purposes. The Foundation also seeks a declaration that the Commonwealth must maintain a detailed accounting of monies in the Lease Fund and how they are used.

33

The Commonwealth responds that "no affirmative legislation is needed" for the Commonwealth to properly effectuate its Section 27 duties and responsibilities. Respondents' Joint Brief at 26. The Commonwealth maintains that the Supreme Court rejected this very argument in *PEDF II*. It also defends that the Commonwealth and the General Assembly "account for all monies derived from the DCNR's oil and gas leases and do, in fact, track the allocation of oil and gas royalty monies." Respondents' Joint Brief at 25.

In *PEDF II*, our Supreme Court determined that "Pennsylvania's environmental trust" requires the Commonwealth to "act affirmatively via legislative action to protect the environment." *PEDF II*, 161 A.3d at 933; *see Robinson Township*, 83 A.3d at 955-66 (the Commonwealth's Section 27 duties are "both negative (*i.e.*, prohibitory) and affirmative (*i.e.*, implicating enactment of legislation and regulations")). The Court recognized numerous legislative enactments aimed at protecting our public natural resources, such as the Clean Streams Law[20] and the Air Pollution Control Act.[21] *See Robinson Township*, 83 A.3d at 958. But, the Court held back from dictating what new legislative enactments or executive actions were necessary, allowing the legislative and executive branches to exercise their discretion in furtherance of their Section 27 duties. Indeed, such a legislative mandate is not the role of the judiciary. *See Benson ex rel. Patterson v. Patterson*, 830 A.2d 966, 968 (Pa. 2003) ("[I]t is not the role of the judiciary to legislate changes the legislature has declined to adopt."). Therefore, we deny the Foundation's request for declaratory judgment for specific affirmative legislation.

---

[20] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1 - 691.1001.

[21] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§4001-4015.

By the same token, we also deny the Commonwealth's request for a sweeping declaration that "no affirmative legislation is needed" for the Commonwealth to properly effectuate its Section 27 duties and responsibilities. Respondents' Joint Brief at 26. Although Section 27 is self-executing for enforcement purposes, as our discussion illustrates, some legislative or executive measures are necessary to ensure that the trust assets are properly spent on trust purposes. *See PEDF II*; *Robinson*. However, we will not dictate how the Commonwealth, or the General Assembly for that matter, should exercise their delegated powers in this regard. To do so would encroach upon executive and legislative power in violation of the constitutional provision governing separation of powers. Therefore, we deny both requests for declaratory judgment with regard to affirmative legislation.

As for the accounting, under Pennsylvania trust law, a trustee must maintain "adequate records of the administration of the trust." Section 7780(a) of the Uniform Trust Act, 20 Pa. C.S. §7780(a). In addition, "[a] trustee shall keep trust property separate from the trustee's own property." 20 Pa. C.S. §7780(b). The trustee has a duty to inform and report. Section 7780.3 of the Uniform Trust Act, 20 Pa. C.S. §7780.3.

The Lease Fund as it exists today is comprised of both royalties, rents, bonuses and interest from the oil and gas leases as well as other sources of revenue. *See* 72 P.S. §1601.2-E(e); *see also* Petitioner's Brief, Exhibit A, Commonwealth's Answer and Objections to the Foundation's First Set of Interrogatories, ¶¶6a, 7a. Although the Commonwealth tracks the source of the monies as they are deposited into the Lease Fund, once in the Lease Fund, money is no longer earmarked or maintained in separate accounts, but is instead "commingled." Petitioner's Brief,

35

Exhibit A, Commonwealth's Answer and Objections to First Set of Interrogatories, ¶¶3a, 3b, 3c. According to the Commonwealth, "it is not possible to identify the originating source of the total monies in the Lease Fund on a particular day." *Id.* Further compounding the problem are the transfers of money from the Lease Fund to the General Fund and beyond. As the money shuffles from one fund to the next, money loses any trace of its originating source.

While money classified as trust principal must be spent on trust purposes, money classified as income need not comply with the same spending restrictions. *PEDF III*, 214 A.3d at 774. By commingling monies in the Lease Fund without classification and by not maintaining adequate records, the Commonwealth is neglecting its fiduciary duties. *See* 20 Pa. C.S. §7780. It is impossible for this Court to determine whether the money appropriated and transferred from the Lease Fund is trust principal, and whether trust principal is being used in a constitutional manner.[22] Thus, an accounting is necessary to ensure that the assets of the trust are being used only for purposes authorized by the trust or necessary for the preservation of the trust in accordance with Section 27. *See PEDF II*, 161 A.3d at 939; *PEDF III*, 214 A.3d at 774. Therefore, we grant the Foundation's Application for Summary Relief in this regard and declare that the Commonwealth, as trustee of Pennsylvania's public natural resources, is required to keep detailed accounts of the

---

[22] Based upon a rough estimate of the monies deposited into and diverted from the Lease Fund, we are extremely concerned that the Commonwealth may not be administering the trust funds with "loyalty, impartiality, and prudence." *See PEDF II*; *see also* Sections 7772, 7773, and 7774 of the Uniform Trust Act, 20 Pa. C.S. §§7772, 7773, 7774.

trust monies derived from the oil and gas leases and track how they are spent as part of its administration of the trust.[23]

## IV. Conclusion

For these reasons, we grant in part and deny in part the parties' cross-Applications for Summary Relief as follows. We grant the Foundation's Application insofar as it seeks a declaration that the Commonwealth is required to maintain accurate records of the Lease Fund and track trust principal as part of its trustee duties, and we deny the Application in all other respects. We grant the Commonwealth's Application for Summary Relief upon concluding that the following legislative enactments are not facially unconstitutional: Sections 104(P) and 1601 of the General Appropriation Acts of 2017 and 2018; the repeal of the 1955 Lease Fund Act; Section 1601.2-E of The Fiscal Code; and Section 1726-G of The Fiscal Code. We also grant the Commonwealth's declaratory request that Lease Fund money, including trust principal, may be expended on environmental conservation initiatives beyond the Marcellus Shale region. However, we deny the Commonwealth's Application insofar as it seeks a declaration that its current usage of the trust is wholly consistent with its Section 27 trustee responsibilities and that affirmative legislation is not necessary.

_____
MICHAEL H. WOJCIK, Judge

Judge Crompton did not participate in the decision of this case.

---

[23] Considering that this Court's opinion in *PEDF III* is pending on appeal before the Supreme Court and that our assessment of what constitutes trust principal and income is challenged therein, we strongly suggest that the Commonwealth account for and track all monies derived from the oil and gas leases, not just royalties and other trust principal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Environmental Defense  :
Foundation,        :
           :
      Petitioner   :
           :
     v.      : No. 358 M.D. 2018
           :
Commonwealth of Pennsylvania, and :
Tom Wolf, in his official capacity  :
as Governor of Pennsylvania,   :
           :
      Respondents  :

# **O R D E R**

AND NOW, this 22nd day of October, 2020, upon consideration of the parties' cross-Applications for Summary Relief to Petitioner's Petition for Review in the Nature of Declaratory Relief, the Applications are granted in part and denied in part in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge